UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISIS A.,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,[1]<br><br>Defendant. | Case No.: 18cv01728-W-MSB<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>**[ECF NOS. 15, 16]** |

This Report and Recommendation is submitted to the Honorable Thomas J. Whelan, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. On July 27, 2018, Isis A. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a decision by the Commissioner of Social Security

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration. See https://www.ssa.gov/agency/commissioner.html (last visited on July 26, 2019). The Court substitutes Andrew Saul for his predecessor, Nancy A. Berryhill, as the defendant in this action. See Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g) (providing that "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant.").

1

denying her application for a period of disability, disability insurance benefits, and supplemental security income. (ECF No. 1.)

Now pending before the Court are the parties' cross-motions for summary judgment. (See ECF Nos. 15 and 16.) The court has also reviewed Plaintiff's Reply. (ECF No. 18.) For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

## I. PROCEDURAL BACKGROUND

On April 7, 2014, Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, alleging disability beginning June 1, 2013 (Certified Admin. R. 241, ECF No. 12 ("AR")). The Commissioner denied the claims by initial determination on September 11, 2014, (AR 117-121), and upon reconsideration on December 4, 2014, (AR 124-28). On January 16, 2015, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 131-32.) The administrative hearing was held on January 23, 2017. (AR 45-66.) Plaintiff appeared at the hearing with counsel, and both Plaintiff and a vocational expert ("VE") testified. (AR 45-66.)

On June 12, 2017, ALJ Jay E. Levine issued a written decision finding Plaintiff was not disabled, as defined in the Social Security Act. (AR 37.) Plaintiff's request for review was denied by the Appeals Council on June 6, 2018, (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, (42 U.S.C. § 405(h)), but subject to judicial review, (42 U.S.C. § 405(g)). This timely civil action followed.

## II. SUMMARY OF THE ALJ'S FINDINGS

The ALJ determined that Plaintiff met the status requirements for disability benefits through December 31, 2018. (AR 30.) In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 21, 2013, the alleged onset date. (AR 32.)

At step two, the ALJ found that Plaintiff had the following severe impairments: multilevel degenerative disc disease of the lumbar spine, obesity, and major depressive disorder. (AR 32.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Commissioner's Listing of Impairments. (AR 32.)

Before step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). The ALJ determined that Plaintiff had the RFC to perform the following activities:

> perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except the claimant can lift up to 20 pounds occasionally and no more than 10 pounds frequently; stand/walk for 4 hours in an 8-hour work day and sit for 6 hours in an 8-hour work day; no work on unprotected heights; no vibration; no walking on uneven ground; no ladders[;] occasionally climb stairs/ramps and occasional stooping and bending; no balancing; limited to routine, non-complex tasks.

(AR 33.)

At step four, the ALJ found that Plaintiff had past relevant work as a telephone solicitor and salesperson. (AR 37.) The ALJ relied on the VE's testimony to find that Plaintiff's RFC allowed her to perform her past relevant work. (AR 37.) Accordingly, the ALJ found that Plaintiff was not disabled from March 21, 2013, through the date of the decision and concluded his analysis. (AR 37.) See 20 C.F.R. § 404.1520(f).

### III. ISSUE IN DISPUTE

The disputed issue in this case is whether the ALJ provided legally sufficient reasons for rejecting Plaintiff's testimony concerning her claims of pain, symptoms, and level of limitation. (See ECF Nos. 15-1 at 3; 16-1 at 4.)

///
///

## IV. STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error. Id.; Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).

"Substantial evidence means more than a mere scintilla but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the case to the Social Security Administration for further proceedings. Id.

## V. DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he did not "articulate a single, specific, clear and convincing reason" for rejecting Plaintiff's testimony. (ECF 15-1 at 12.) Plaintiff argues that the ALJ relied on incomplete or one-sided evaluations of the medical evidence to reject Plaintiff's

4

18cv01728-W-MSB

testimony. (Id. at 7, 9.) Plaintiff also argues that the ALJ failed to adequately identify how medical evidence was inconsistent with Plaintiff's statements. (Id. at 7.)

Defendant argues affirmance is merited because the ALJ relied upon clear and convincing reasons for rejecting Plaintiff's allegations when he "explained that the medical-opinion evidence, the weight of the medical evidence, and Plaintiff's demonstrated capabilities supported Plaintiff's RFC." (ECF 16-1 at 4-5 & n.3.) Specifically, Defendant argues that the medical-opinion evidence supported Plaintiff's RFC, that the clinical findings of Plaintiff's physicians failed to support Plaintiff's allegations of disabling physical limitations, and that Plaintiff's activities of daily living demonstrated a level of functioning that contradicted limitations beyond Plaintiff's restrictive RFC. (Id. at 5-7.)

**A.     Legal Standard**

"Generally, a claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can the medical evidence alone." Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001). When evaluating the credibility of a claimant's allegation of disabling pain, the ALJ must engage in a two-step analysis. See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996), superseded, in part, on unrelated grounds by 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1281-82 (citations omitted); see also Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). Second, if the first step has been satisfied and there is no evidence of malingering, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by

offering specific, clear and convincing reasons for doing so."[2] Smolen, 80 F.3d at 1281 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)).

At step one of the analysis, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 34.) The parties do not challenge the ALJ's step one determination in this case. (See ECF No. 15-1 at 4; ECF No. 16-1 at 4.) At step two, the ALJ did not report any affirmative finding of malingering, (see AR 34), Defendant does not argue the ALJ made any such finding, (see ECF No. 16-1), and the only physician to opine on the topic stated that Plaintiff was not a malingerer. (See AR 29-37, 437.) Therefore, the ALJ was only justified in rejecting Plaintiff's testimony if the ALJ provided specific, clear, and convincing reasons for doing so. See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th. Cir. 2014); Molina, 674 F.3d at 1112. In addition to giving clear and convincing reasons for rejecting Plaintiff's testimony, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient; the ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible." Dodrill, 12 F.3d at 918.

**B.** **The ALJ Failed to Articulate a Clear and Convincing Reason for Rejecting Plaintiff's Pain and Symptom Testimony**

Before conducting his two-step evaluation of Plaintiff's testimony, the ALJ summarized Plaintiff's testimony in a single paragraph:

> At hearing, the claimant testified she is 35 years old and has three children, ages 13, 10, and 1. The claimant stated that she has three herniated discs in her back and experiences constant pain in her back. The claimant testified that she takes medication, but that it is ineffective. The claimant stated she has used a cane for three years to assist in walking. The claimant reported a

---

[2] Considering Defendant's concession that this standard applies in our circuit, the Court will not address Defendant's argument for the appellate record that a different standard should apply. (See ECF No. 16-1 at 5 n.3.)

6

> doctor recommended she undergo surgery for her back. On a typical day, the claimant reported she spends her time taking care of her son, reading, and watching television. She stated she rarely goes out to shop. She reported in the past 15 years she worked as a telemarketer and store salesperson. The claimant reported that while she was working as a telemarketer she began experiencing mental health symptoms such as anxiety and depression.

(AR 34.) The ALJ then explained his two-step analysis of Plaintiff's credibility in one generic sentence, consisting primarily of boilerplate language:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

(AR 34.); see Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (discussing the ALJ's statement that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," and noting that ALJs "routinely include this [boilerplate] statement in their written findings as an introduction . . . before [identifying] what parts of the claimant's testimony were not credible and why."). Generously interpreting the ALJ's recitation of evidence on the following two pages, by "medical evidence and other evidence in the record," the ALJ referred to evidence of Plaintiff's activities of daily living and objective medical evidence as the basis for his adverse credibility determination. (See AR 34-36); cf. Burrell, 775 F.3d at 1137 (discussing a similarly structured ALJ opinion, the Ninth Circuit stated: "The ALJ's decision then drifts into a discussion of the medical evidence; it provides no reasons for the credibility determination.").

### 1. The ALJ failed to identify the specific testimony rejected

At the outset, the Court notes that the ALJ failed to identify which portions of Plaintiff's testimony he discredited, or to articulate clear and convincing reasons for doing so. If rejecting a claimant's testimony, an "ALJ must state specifically which

7

symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen, 80 F.3d at 1284. The ALJ must identify and explain why the specific testimony is not credible because failure to do so will preclude meaningful review of the ALJ's analysis. See Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015). Ninth Circuit law is "clear that we may not take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors—and comb the administrative record to find specific conflicts." Burrell, 775 F.3d at 1138. When an ALJ fails to specify the rejected testimony and how the evidence provides clear and convincing reasons to reject it, the reviewing court cannot proceed without "substitut[ing its own] conclusions for the ALJs, or speculat[ing] as to the grounds for the ALJ's decision." Treichler, 775 F.3d at 1103. Therefore, the reviewing court cannot determine whether the ALJ's decision was supported by substantial evidence. Brown-Hunter, 806 F.3d at 495. Such error is not harmless and requires reversal. Id. at 489.

In this case, the ALJ gave only the brief summary of Plaintiff's hearing testimony described above. When discussing his rejection of the testimony, he stated that her pain and symptom testimony "was not entirely consistent with the medical evidence and other evidence of record." (AR 34.) When discussing activities of daily living, the ALJ noted some specific evidence of such activities, but only vaguely referred to the testimony at-issue as "claimant's complaints of disabling symptoms and limitations," and did not explain how the ADLs conflicted with the testimony. (See AR 36.) When discussing "objective medical evidence," the ALJ recited some specific test results and observations from the medical records, while concluding without explanation that they failed to support or corroborate "the alleged physical [and mental] impairments," "claimant's allegations of disabling symptoms," "claimant's allegations of disabling physical limitations," or simply "claimant's allegations." (See AR 34-36.)

The ALJ's generic references to Plaintiff's statements as "complaints of disabling symptoms and limitations," (AR 36), did not specifically identify the statements that the ALJ was discrediting. Plaintiff made many statements about her pain and symptoms in

8

her hearing testimony, (see AR 47-66), but the ALJ failed to identify the portions that he did not believe or to connect the statements to the evidence that disproved it, (see AR 34-36). This failure was legal error that prevents the Court from determining whether the ALJ's decision is supported by substantial evidence, and for this reason, the Court recommends remand. See Eldridge v. Berryhill, Case No.: 17cv497-JLS (BLM), 2018 WL 2357147, at *1, *8 (S.D. Cal. May 23, 2018) (recommending remand because the ALJ's decision was not supported by substantial evidence where "[t]he ALJ's vague references to Plaintiff's statements as 'allegations of disabling limitations' are not specific identifications of which statements are being discredited,"), report and recommendation adopted, 2018 WL 3343099 (S.D. Cal. July 9, 2018); Furiani v. Berryhill, No. 17-cv-02221-LAB (RNB), 2018 WL 5733746, at *1, *3 (S.D. Cal. Oct. 29, 2018) (finding that the ALJ erred when "failed to posit specific testimony by plaintiff" when he identified the discredited testimony as "complaints of disabling symptoms and limitations."), report and recommendation adopted, 2019 WL 1253902 (S.D. Cal. Mar. 18, 2019).

Though the Court concludes that the ALJ's failure to identify the discredited testimony and detail evidence providing a clear and convincing basis for rejecting the testimony, the Court also finds that the ALJ's proffered reasons failed to meet the clear and convincing standard for additional reasons, described further below.

### 2. Plaintiff's testimony was not inconsistent with ADL

The ALJ found that Plaintiff's activities of daily living ("ADLs"), "show functional capacity not consistent with the claimant's complaints of disabling symptoms and limitations." (AR 36.) There are "two grounds for using daily activities to form the basis of an adverse credibility determination": an ALJ may find that such daily activities either (1) contradict the claimant's other testimony, or (2) meet the threshold for transferable work skills. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). While an ALJ may rely on ADLs that are inconsistent with the subjective allegations of disability to reject a claimant's testimony, see Molina, 674 F.3d at 1113 ("Even where [daily] activities

9
18cv01728-W-MSB

suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."), the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day," Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014).

In rejecting Plaintiff's testimony, the ALJ simply recited a list of ADLs that he purported to take from the record, which he believed demonstrated Plaintiff could "perform a wide range of activities of daily living." (AR 36.) From the hearing on January 23, 2017, the ALJ noted that Plaintiff "has three children, ages 13, 10, and 1," "lives with her sister and children," and "is able to drive a car." (AR 36.) The ALJ cited an Adult Function Report ("Function Report") as evidence Plaintiff "makes lunch and does chores for herself and children," "folds laundry and helps her children do homework," "shops in stores," and engages in hobbies, including "reading, television, puzzles, word searches, and movies." (AR 36.) The ALJ finally cited medical reports from August 1, 2013 and August 1, 2014, noting that Plaintiff was able to live in an independent situation and perform basic self-care: eating, bathing, using the toilet, dressing and getting up from a bed or a chair. (AR 36 (citing AR 431, 438).)

The Court's review of the record reveals that the ALJ either misstated much evidence or took it out of context. See Overton v. Berryhill, No. 17cv25-BEN (BLM), 2017 WL 5159550, at *1, *18 (S.D. Cal. Nov. 16, 2017) (finding the ALJ erred when he "cherry-picked segments of medical notes" and "ignored other segments of the same notes"), report and recommendation adopted, 2018 WL 1561315 (S.D. Cal. Mar. 27, 2018). Regarding Plaintiff's hearing testimony, the ALJ noted that "[o]n a typical day, the claimant reported she spends her time taking care of her son, reading, and watching television." (AR 34.) The ALJ failed to mention that at the same hearing Plaintiff testified she required "in-home support services" and help from her mother and fiancé

to care for herself and her children. (AR 36, 54.) Plaintiff also described the procedure required for her to interact with her one-year-old child: "So for me to pick him up, I have to sit down, my daughter puts him on the couch, and then I put him on my lap." (AR 54.) The ALJ noted that Plaintiff testified she was "able to drive a car." (AR 36.) This isolated statement was misleading because Plaintiff also testified that she drove "[o]nly if [it was] necessary," like to attend medical appointments, and when she drove, she sat on a special "donut" to relieve her back pain. (AR 59.)

The ALJ also misrepresented Plaintiff's testimony contained in May 23, 2014, Adult Function Report ("Function Report"). (AR 36 (citing 254-55, 257).) Citing the Function Report, the ALJ stated that Plaintiff "makes lunch and does chores for herself and children" and "shops in stores." (AR 36.) However these statements were inaccurate. The ALJ did not mention that the Function Report was completed on Plaintiff's behalf by her future mother-in-law, Maxine Cummings.[3] (AR 261, 265.) The Function Report actually reads: "She makes some toast. She takes her meds. She gets sleepy. I make lunch + do chores for her and the kids. I shop + cook—wash and help w/ the kids." (AR 254.) It is apparent, when read in context, that the "I" refers to Ms. Cummings, rather than Plaintiff. This is confirmed when considered together with Ms. Cumming's Third Party Function Report ("Third Party Report"), completed on the same date as the Function Report. (See AR 262-73.) In this report, Ms. Cummings reports on her own behalf, "I do all dinners, breakfast, lunches for the two kids and my son," and "I . . . [h]elp [Plaintiff] wash clothes, fix meals, go to Dr appts. I drive, etc." (AR 267, 265.) Ms. Cummings also stated that she was doing all the shopping for Plaintiff's family. (AR 267, 268.) Plaintiff indicated through Ms. Cummings in the Function Report that the

---

[3] Defendant contends that if Plaintiff's claim is true, and "Plaintiff did not actually complete the disability report she submitted to the agency as her own, this would undermine her claims." (ECF No. 16-1 at 8.) The Court notes that the underlying assumption in Defendant's argument, that Plaintiff submitted the report as her own, is not born out by the evidence. The record is clear that the report reflects it was completed by Plaintiff's future mother-in-law, Maxine Cummings, on Plaintiff's behalf, and as such, this fact does not undermine Plaintiff's credibility in any way. (See AR 261.)

11

only chores Plaintiff did were briefly preparing breakfast for herself (typically toast, because she could not stand long or get pots and pans out from the cupboard), folding laundry while sitting on the bed approximately twice a week for 15-20 minutes, and helping her kids with their homework four nights a week for about a half hour. (AR 253-55.) Contrary to the citation provided by the ALJ, the portion of the Function Report that specifically addressed Plaintiff's ability to shop indicated that Plaintiff shopped by phone and computer, and not in stores, for clothes and items for her kids. (AR 256.) While the Function Report stated that Plaintiff's hobbies included reading, watching television and movies, doing puzzles, it did not distinguish how much time was spent on each activity, but stated that Plaintiff spent approximately three to four hours total per day on these activities. (AR 257.)

The ALJ again took evidence out of context with the doctor's basic self-care reports. Specifically, he stated that in August 2013, "psychiatrist Mohammed Bari reported the claimant had an 'independent' living situation, (AR 36), without explaining that Dr. Bari was filling out a form which provided two options to describe "Living Situation"—either "Independent" or "Board & Care," (see AR 36, 421). Dr. Bari's selection on this form did little to describe Plaintiff's ADLs, but instead represented that she lived in a home *rather than a care facility*. While the ALJ correctly quoted Dr. Verdolin, the pain specialist's, August 2014 report that Plaintiff had "no impairment of activities of daily living with eating, bathing, using the toilet, dressing or 'getting up from bed or chair,'" (see AR 36 (citing AR 438)), he omitted from the same report, that Dr. Verdolin reported Plaintiff suffered constant low back pain (rated eight out of ten) that improved with rest, got worse with activity, and was severe enough for Dr. Verdolin to administer a second caudal epidural steroid injection the same day, (see AR 36, 438-39). This level of treatment suggests Plaintiff's pain was substantial. See, e.g., Garrison, 759 F.3d at 1015 n.20 ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment.")

Additionally, the ALJ failed to identify whether portions of Plaintiff's testimony were inconsistent with her activities of daily living, or if the testimony was inconsistent because it demonstrated a functional capacity that would allow her to work. (See AR 36.) The ALJ is required to "specifically identify the testimony . . . he finds not to be credible and . . . explain what evidence undermines the testimony." Holohan, 246 F.3d at 1208 (9th Cir. 2001). The evidence of daily activities may be used as a basis of rejecting a Plaintiff's testimony, but the ALJ must explain how the specific testimony either "contradicts the claimant's testimony," or "meets the threshold for transferable work." Orn, 495 F.3d at 639. Because the ALJ did not identify any actual inconsistency in his opinion or describe his reasoning, the Court cannot ascertain which of Plaintiff's symptom and pain testimony the ALJ rejected based on the ADL evidence, or why. (See AR 36.)

Finally, the ADLs the ALJ described are not inconsistent with testimony noted by the ALJ, (AR 34), and do not demonstrate an ability to function in the work place. The Ninth Circuit has repeatedly held that "[a] claimant 'does not need to be utterly incapacitated in order to be disabled.'" Revels, 874 F.3d at 667 (quoting Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004)); Garrison, 759 F.3d at 1016 ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."). That Plaintiff could prepare toast in the morning, fold laundry, help her kids with homework, drive when absolutely necessary with the use of a "donut," watch TV or do a puzzle for up to four hours in a day, and perform the most basic self-care while in constant pain is not inconsistent with the testimony recounted by the ALJ—that Plaintiff had experienced constant pain related to three herniated discs in her back that was not relieved by medication and that she suffered from anxiety and depression. (See AR 34.)

Nor were these ADLs demonstrative of her ability to rejoin the work force—the total time spent on chores did not even come close to Plaintiff "spend[ing] a substantial part of her day engaged in pursuits involving the performance of physical functions that

are transferable to a work setting." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). Passive activities like watching television or movies are not transferable skills, and the amount of time Plaintiff spent preparing breakfast, folding clothes, and helping her kids with homework or doing puzzles was not substantial. See, e.g., Wilson v. Comm'r of Soc. Sec. Admin., 303 F. App'x 565, 566 (9th Cir. 2008) (finding a plaintiff's occasional driving does not render him able to work); Vertigan, 260 F.3d at 1050 (9th Cir. 2001) (finding "only a scintilla of evidence in the record to support the ALJ's finding that [plaintiff] lacked credibility about her pain and physical limitations" where the ALJ relied on Plaintiff's ability to go "grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim, watch television, . . . read. . . . [and participate in] physical therapy for six months and exercise[] at home."); Costa v. Berryhill, 700 F. App'x 651, 653 (9th Cir. 2017) ("The ability to accomplish daily tasks irregularly does not necessarily equate with an ability to work."); Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) ("[T]here is almost no information in the record about [plaintiff]'s childcare activities; the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations.").

For these reasons, the ALJ did not identify a specific, clear, and convincing reason for discrediting Plaintiff's pain and symptom testimony when he selectively and incorrectly noted Plaintiff's ADLs, and did not explain how those ADLs either contradicted Plaintiff's testimony or equaled transferable work skills.

### 3. Lack of support from objective medical evidence is not clear and convincing reason

Though the ALJ's single sentence discrediting unknown portions of Plaintiff's testimony claimed such statements "were not entirely consistent with the medical evidence and other evidence in the record," the ALJ's discussion of the objective medical evidence does not identify any inconsistency, but instead explains that evidence does not support Plaintiff's unspecified testimony. (See AR 34-36.) The ALJ cited to

objective medical evidence consisting of radiological evidence and clinical findings of Drs. Borrero, Minkoff, Tayyab, Altman, and Bari. (AR 34-35.) When the ALJ discussed that specific evidence, he did not articulate even a single inconsistency, but he stated seven times in various ways that the evidence did not support Plaintiff's testimony. (See AR 34-35 ("In terms of the alleged physical impairments, the objective medical evidence *fails to support* the claimant's allegations;" "The radiological evidence *did not support* the claimant's allegations;" "[T]he clinical findings of the claimant's doctors *fails*[sic] *to support* the claimant's allegations;" "[t]he findings of the claimant's treating doctors *fails*[sic] *to corroborate*;" "[T]he findings of orthopedic CE Jeff Altman, M.D., *fail[ed] to corroborate* the claimant's allegations".).) Defendant's brief concedes that the ALJ offered the clinical findings of Plaintiff's treating doctors, Drs. Borrero and Tayyab, as having "failed to corroborate Plaintiff's claims of disabling limitations." (See ECF 16-1 at 6.)

The distinction between medical evidence failing to support a plaintiff's testimony rather than being inconsistent is critical because the latter may qualify as a specific, clear and convincing reason to reject a plaintiff's testimony, while the former does not. Compare Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir.1995) (finding that contradiction with medical records is a sufficient basis for rejecting the claimant's subjective testimony) and Klein v. Berryhill, 717 F. App'x 664, 666 (9th Cir. 2017) (finding inconsistency between a plaintiff's testimony and objective medical evidence can comprise a clear and convincing reason for rejecting the testimony) with Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (finding that the ALJ's sole reason for an adverse credibility determination was legally insufficient when it was premised on lack of medical support for claimant's testimony); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 884 (9th Cir. 2006) (describing ALJ's reliance on Plaintiff's testimony being not consistent with or supported by the overall medical evidence of record" as "exactly the type [of justification] we have previously recognized the regulations to prohibit"). A lack of medical evidence is a factor the ALJ may consider in his analysis of a plaintiff's

testimony, but it cannot be the sole basis for rejecting it.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) ("[A]n [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.").  A claimant is not required to provide medical evidence concerning the severity of his pain. Craig v. Astrue, 269 F. App'x 710, 712 (9th Cir. 2008).  Because the ALJ's other reason for discrediting Plaintiff's testimony, inconsistency with ADL evidence, was legally insufficient to support his adverse credibility determination, this remaining reason cannot be legally sufficient by itself to reject Plaintiff's testimony.  See Stone v. Berryhill, No. 17-cv-1689-W-RNB, 2018 WL 2317549, at *1, *5 (S.D. Cal. May 17, 2018) (finding ALJ's rejection of plaintiff's pain and symptom testimony due to the fact that objective medical evidence in the record did not support it "could not be legally sufficient where the court had already rejected the ALJ's other justifications"), report and recommendation adopted, 2018 WL 3327873 (S.D. Cal. July 6, 2018).

   **4.    Medical opinion testimony supporting the RFC was not relied on by the ALJ to reject Plaintiff's testimony**

Defendant argues that medical opinions in the record were unanimously consistent with the ALJs residual functional capacity determination, and that this is a specific, clear and convincing reason for discounting Plaintiff's testimony. (See ECF No. 16-1 at 5-6 & n.3 (citing AR 36, 76-77, 101-02, 692).)  In the first instance, the Court notes that the ALJ did not rely on the medical opinion evidence for his credibility determination.  While he specifically addressed Plaintiff's credibility after discussing objective medical evidence and ADLs, after discussing each medical opinion, he evaluated the opinion itself, without mention of Plaintiff's credibility.  (Compare, e.g., AR 36 ("The opinion of Dr. Altman is given great weight because Dr. Altman is an accepted medical source who examined the claimant directly and his conclusions were consistent with the claimant's activities of daily living.") with AR 35 ("Further, the findings of orthopedic CE Jeff Altman, M.D., fail to corroborate the claimant's allegations

of disabling functional limitations."). "We are constrained to review the reasons the ALJ asserts." Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.2003).

Second, the ALJ's focus on his RFC determination rather than Plaintiff's testimony, failed to provide specific, clear and convincing reasons for discrediting Plaintiff's testimony. See Brown-Hunter, 806 F.3d at 489 ("We hold that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination.") Therefore, the medical opinion evidence consistent with the RFC is not a specific, clear, and convincing reason to discredit Plaintiff's testimony.

## IV. CONCLUSION AND RECOMMENDATION

In conclusion, the Court finds that ALJ's bases for rejecting Plaintiff's subjective pain and symptom testimony were legally insufficient and lacked substantial evidence. "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded" for further proceedings. Garrison, 759 F.3d at 1019 (quoting Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)). To address the errors noted above, remand for additional administrative proceedings is warranted. See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

For the foregoing reasons, this Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED,** and that Judgment be entered reversing the decision of the Commissioner and that this matter be **REMANDED** for further proceedings.

**IT IS ORDERED** that no later than **August 16, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 23, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those

objections on appeal of the Court's order.  See <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: August 2, 2019

Honorable Michael S. Berg
United States Magistrate Judge